IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                    Plaintiff,

          vs.

MICHAEL HUYCK,

                    Defendant.

**8:13CR107 AND 8:15CR44**

**SENTENCING ORDER**

This matter is before the Court for sentencing. This sentencing order supplements findings made on the record at a sentencing hearing on September 1, 2015.  *See* Filing No. 497.

**BACKGROUND**

Pursuant to an investigation of peer-to-peer file sharing, investigators with the FBI Omaha Cyber Crimes Task Force obtained a search warrant seeking evidence of child pornography at the defendant's residence.  Defendant was found guilty of Count I, receipt and attempted receipt of child pornography, in violation of 18 U.S.C. § 2252A, subparagraphs (a)(2) and (b)(1), and Count II, access with the intent to view, in violation of 18 U.S.C. § 2252A(a)(5)(B) of the second superseding indictment in case number 13CR107.[1]  He was further found guilty of Count II, possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), in case number 15CR44.[2]  The evidence adduced at trial showed that the charges in the first case pertained to Huyck's access to and receipt

---

[1] The mandatory minimum sentence for receipt of child pornography (the crime charged in Count I) is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, possession of child pornography (the crime charged in Count II) has no mandatory minimum and carries a maximum sentence of ten years for a first offender. 18 U.S.C. § 2252(b)(1). The defendant was not charged with distribution.

[2] The jury also found defendant guilty of Count I, in 15CR44, but the Court found insufficient evidence to support that verdict. The Court also dismissed Count III in this case.

of child pornography from the Tor-network-based Pedoboard website in late 2012. The charges in the second case related to child pornography found on computer storage devices (a Hitachi hard drive and a G-Technology external storage device or "thumb drive") that were seized in a search of the defendant's home on April 9, 2013. There was evidence that some equipment had been "wiped" or "cleaned" shortly before the equipment was seized.

In the Presentence Investigation Report (PSR), the Probation Office based its outline of the offense conduct on the prosecutor's version of events. Filing No. 499, PSR (sealed) at 4-9.

**Case 8:13CR107 – Case One**

On October 23, 2013, a two count Second Superseding Indictment provided a description of Website A, a child pornography bulletin board.  It operated from January of 2009 until December of 2012 from computers located in Bellevue and Omaha, Nebraska, in the District of Nebraska. On November 15, 2012, the computer server hosting "Website A" was seized from a web-hosting facility in Bellevue, Nebraska. The website remained operating in Omaha, Nebraska, from November 16, 2012, until December 2, 2012, at which time "Website A" ceased to operate.  Law enforcement viewed and examined the contents and communications of "Website A". Topics of conversation in that area consistently involved the sexual exploitation of children. As of December 2, 2012, "Website A" had over 5,600 members, over 3,000 message threads, and over 24,000 postings.  "Website A" also depicted infant and toddler aged children depicted in a pornographic way.  In total, "Website A" contained thousands of postings and messages and well over 10,000 child pornography images.

**Case 8:15CR44 – Case Two**

On February 18, 2015, a three count Indictment was filed in the District of Nebraska, charging in Count I that on or about between August 20, 2010, and October 1, 2010, in the District of Nebraska, and elsewhere, the defendant, Michael Huyck, knowingly received and attempted to receive, any child pornography as defined in Title 18, United States Code, Section 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1).  Count II charged that on or about between August 20, 2010, and April 9, 2013, in the District of Nebraska, the Defendant, Michael Huyck, did knowingly possess a computer, computer disk, and any other material, to wit: a 160 GB Hitachi computer hard drive, model no. HTS723216L9SA60, that contains an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(5)(B).  Count III charged that on or about between November 20, 2012, and April 9, 2013, in the District of Nebraska, the Defendant, Michael Huyck, did knowingly possess a computer, computer disk, and any other material, to wit: a 2TB G-technology external storage device, model G-SF3 2000, serial no. W701220296, that contains an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count III in 8:15CR44 was dismissed by the Court at the close of evidence. The jury returned a verdict of guilty on Counts I and II for both cases on March 6, 2015.  The Court did not accept the verdict on Count I.  Sentencing was scheduled for May 29, 2015, then continued to June 26, 2015, and continued again to September 1, 2015.

**PSR**

The presentence investigator based her recommendations on the following information. Defendant was a visitor to the PedoBoard website. PedoBoard was a repository of images depicting the sexual abuse and rape of prepubescent children. More

3

than 10,000 images of child pornography were on PedoBoard.  Defendant's IP address was identified as visiting the PedoBoard on November 21, 2012. The images included children between five and ten years of age engaged in sexual acts with children and adults. Defendant admitted using TOR. He admitted that he was an IT professional.  Defendant used a data wiper to completely erase data from one or more of his drives.

Huyck has two full siblings and five half siblings.  He is single and has never been married, although he has one daughter. He completed his GED in 1995 and earned a Computer Information Systems B.A. in 2004. He has taken some classes towards a master's degree.  He previously worked as a computer programmer.

The probation office recommended the following sentencing options:

Statutory Provisions: Count I (8:13CR107): The minimum term of imprisonment is five years and the maximum term is twenty years. 18 U.S.C. § 2252A(a)(2) and 18 U.S.C. § 2252A(b)(1).  Count II, both cases: The maximum term of imprisonment is ten years. 18 U.S.C. § 2252A(a)(5)(B).  Recommended sentence:  120 months, concurrent.

Based upon a Total Offense Level 33 and a Criminal History Category III, the guideline imprisonment range is 168 to 210 months; however, the statutory maximum sentence in Count II of both cases is 120 months.

A presentence investigation report was prepared in this matter.  Filing No. 499 (sealed).  The Probation Office grouped Counts I and II of 8:13CR107 and Count II for 8:15CR44 together for guideline calculation purposes. Pursuant to U.S.S.G. § 3D1.2(d), the counts are grouped when the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature.

The Probation Office determined that the defendant's base offense level was 22 under U.S.S.G. § 2G2.2(a)(2) for receipt of child pornography. *Id.* at 14.  It found a two-level downward adjustment under U.S.S.G. § 2G2.2(b)(1) (defendant did not intend to traffic in or distribute such material) was appropriate.   It found the following upward adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for material containing a prepubescent minor); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other depictions of violence); a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) (for more than 600 images). *Id.* The application of these enhancements results in an adjusted offense level of 33. *Id.* There is no reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and thus Huyck's total offense level under the Guidelines is 33. *Id.*

The Probation Office assessed six criminal history points, three for first degree assault in October of 1995 and three for theft by unlawful taking in December of 1995. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of six establishes a criminal history category of III.

The government has no objections to the report.   *See* Filing No. 499, at 22. The defendant, however, objected to several provisions, including stating that it is inaccurate to state that 95 images of child pornography were found on the defendant's devices. One single device held those 95 files in a system-generated thumbs.db file. Notably, that file is only accessible through the use of forensic software. Thus, those images are not accessible to a computer user without forensic software. There was no evidence that the defendant was in possession of or had access to the required forensic software in this case.  He also contends "There is no evidence to support the conclusion that 'the defendant had likely

been involved with significantly more photographs and/or videos of child pornography' and [t]here is no evidence that the defendant was 'regularly wiping his hard drive.'" Further, he contends that "[t]here is no evidence to support a determination that Mr. Huyck is a threat to children" and moved for a departure for overstatement of criminal history pursuant to U.S.S.G. § 4A1.3 and for a variance under 18 U.S.C. 3553.  *Id.* at 22-24.

At the sentencing hearing, the Court sustained the defendant's objection to the five-level enhancement for images numbering in excess of 600 (see paragraphs  31, 42, and 52-55, *see* Filing No. 499 (sealed)) in that the enhancement per 2G2.2 is +2 instead of +5 but otherwise overruled; and the objections are overruled as to paragraphs 32, 43. The Court further granted the defendant's motion for variance, and for a downward departure.  The Court found the defendant's criminal history was overstated and criminal history category II applies.  Accordingly, the Court sentenced the defendant to the Bureau of Prisons for a term of seventy-two months on Count I and thirty-six months Count II to run concurrently.

**LAW**

Because the Sentencing Guidelines are no longer mandatory, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker*, 543 U.S. 220, 260-61 (2005); *Gall v. United States*, 552 U.S. 38, 59 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Rita v. United States*, 551 U.S. 338, 349-50 (2007); *Cunningham v. California*, 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" Kimbrough, 552 U.S. at 101 (quoting Booker, 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history

and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant.  *See, e.g., Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States*, 555 U.S. 350, 351-52 (2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."  *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson*, 555 U.S. at 351; *United States v. VandeBrake*, 679 F.3d 1030, 1040 n.7 (8th Cir. 2012) (explaining that the three steps in the post-Booker sentencing process are: (1) to determine the initial advisory guideline sentencing range, (2) to determine any appropriate departures (upward or downward) from the guidelines, and (3) to decide whether to vary from the advisory guideline range based on the factors set forth in § 3553(a), so long as such a variance is reasonable).  A sentencing court may not presume that a sentence within the applicable Guidelines range is reasonable.  *Id.*

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards", basing "its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 347-50.  In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics. *See* United States Sentencing

Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 14, 72-73 (November 2004) hhttp://www.ussc.gov/ ResearchandStatistics/ ResearchProjects/ Miscellaneous/ 15yearstudy/index.cfm ("Fifteen-Year Assessment") (last visited Oct. 2, 2013); U.S.S.G. § 1A.1, intro. comment., pt. A, 3; *Kimbrough*, 552 U.S. at 96; *Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it  "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve §-3553(a)'s purposes even in a mine-run case."  *Kimbrough*, 552 U.S. at 109-110 (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Comm'n, *The History of the Child Pornography Guidelines* 44-48 (October 2009), http://www.ussc.gov/Publications/Offense_Types/index.cfm ("2009 Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited Oct. 2, 2013); Troy Stabenow,

*Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), http://www.fd.org/navigation/select-topics-in-criminal-defense/sentencing-resources/subsections/deconstructing-the-guidelines (unpublished comment) (last visited Oct. 2, 2013). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives. *See* 2009 Child Porn History Rep't at 8–50 (discussing the various statutes related to child pornography that Congress has enacted since 1977); United States Sentencing Comm'n, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/SCAC_Executive_Summary.htm (last visited Oct. 2, 2013), 1996 Rep't to Cong (Dec. 2012), http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm ("2012 Rep't to Cong."); *see, e.g.*, U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27, 2013). Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, codified as amended at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, codified as amended at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, codified as amended at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, codified as amended at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, codified as amended at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any

9

real children), invalidated as unconstitutional in Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002), & 2252A; the Protection of Children from Sexual Predators Act of 1998, codified as amended at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), codified as amended at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008). In late 2012, Congress enacted the Child Protection Act of 2012, which raised the statutory maximum term of imprisonment for possession of child pornography from ten to twenty years for defendants who possessed images of a prepubescent minor or a minor under twelve years of age. *See* P. L. No. 112–206, 126 Stat. 1490 (Dec. 7, 2012). Sentencing Commission data shows that virtually all offenders (96.3%) possess images of minors who were prepubescent or under twelve years of age. *See* 2012 Rep't to Cong. at 312.

 "The three main statutory penalty ranges in federal child pornography cases today are 15 years to life imprisonment for production offenses, five to 15 years for receipt, transportation, and distribution (R/T/D) offenses, and zero to ten or 20 years for possession offenses (depending on the age and sexual maturity of the victims depicted in the images possessed)."[3] *Id.* at 38-39.  Overall, the Commission reports that "[b]y fiscal year 2010, the average prison sentence for offenders convicted solely of possession offenses was 63 months, and the average prison sentence of offenders convicted of R/T/D offenses was 129

---

[3] The Guidelines sentencing ranges correspond accordingly:

Production offenders are sentenced under § 2G2.1 and face a base offense level of 32.  R/T/D offenders face a base offense level of 22 (although offenders who only received and had no intent to distribute are eligible for a 2-level reduction).  Offenders only convicted of possession have a base offense level of 18. Offenders sentenced under either §§ 2G2.1 or 2G2.2 also face up to six potential enhancements for a variety of aggravating factors.

*Id.* at 39.

months." *Id.* at 164.  Also, in that year, "slightly over half of all non-production offenders faced a statutory mandatory minimum sentence" and the vast majority of such offenders faced a five-year statutory mandatory minimum sentence." *Id.* at 165.

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31.  In particular, the amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."  U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); 2009 Child Porn. History Rep't at 30-31.  In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."  *Id.* at 37.  The primary victims of the crime of possession of pornography are the exploited children.  *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992).

The Commission, in agreement with the general consensus among stakeholders, now believes that child pornography offenses are extremely serious, but it "also concurs with the many stakeholders who contend that the sentencing scheme should be revised to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness." 2012 Child Pornography Rep't, Exec. Summary at xix. The Commission concluded that "the current sentencing scheme results in overly severe guideline ranges for

11

some offenders based on outdated and disproportionate enhancements related to their collecting behavior." *Id.* at 321. At the same time, the Guidelines scheme results in unduly lenient ranges for other offenders who are more culpable or dangerous. *Id.* For instance, the Commission found that, for 2010, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of all § 2G2.2 cases. *Id.* at 209, 312 ("virtually all offenders (96.3%) possess images of minors who were prepubescent or under 12 years of age"). Over the last decade, technological changes, such as the widespread use of peer-to-peer (P2P) file-sharing networks, have changed the typical offender's profile—the anonymous and ready accessibility offered by new technologies means that the typical offender's collection has not only grown in volume but is also likely to include more of the worst kinds of material, including graphic sexual abuse of prepubescent children. *Id.* at 312-13, 316. Due to the "dramatic technological changes that have greatly facilitated the commission of child pornography offenses," even "entry-level offenders" can easily acquire and distribute large quantities of child pornography. *Id.* at 6, 149, 154, 312–13. The Commission now recommends that the non-production Guideline should be revised to more fully account three factors:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
>
> 2) the degree of an offender's engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
>
> 3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

2012 Child Pornography Rep't at 320.

Also, the fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." United States Sentencing Comm'n, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) ("1991 Mand. Min. Rep't"), http://www.ussc.gov/Legislative_ and_Public_Affairs/ Congressional_ Testimony_and_Reports/Mandatory_Minimum_Penalties/199108_RtC_Mandatory_Minimu m.htm (last visited Jan. 9, 2014). The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. 1991 Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply"); United States Sentencing Comm'n, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, Executive Summary at xxxi (Oct. 2011) ("2011 Mand. Min. Rep't") http://www.ussc.gov/Legislative_and_Public_ Affairs/ Congressional_ Testimony_and_ Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_ Minimum.cfm (last visited Oct. 2, 2013) ("The Commission's preliminary review of the available sentencing data suggests that the mandatory minimum penalties for certain non-contact child

pornography offenses may be excessively severe and as a result are being applied inconsistently."). The Commission acknowledges that widespread sentencing disparities among similarly situated offenders in child pornography cases are attributable in part to disparate charging practices.  2012 Child Pornography Rep't. at 13.

Long terms of imprisonment for non-acting-out offenders have been strongly attacked as unsound, overly harsh and as fundamentally deviating from the Guidelines' overarching policy and expertise.  *See, e.g., United States v. Dorvee*, 616 F.3d 174, 185-88 (2d Cir. 2010); *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) *United States v. Grober*, 624 F.3d 592, 609 (3d Cir. 2010); *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009).[4]

**DISCUSSION**

*A. Guideline Calculation*

The Court adopts in part and rejects in part the findings in the PSR. Huyck's base offense level under the Guidelines is 22.  *See* U.S.S.G. § 2G2.2(a)(2).  The Court finds the

_____

[4] Numerous district courts have also determined that the Guidelines in child pornography cases are owed less deference than those for other offenses because the Guidelines for child pornography crimes are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise."  *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010); *see, e.g., United States v. Munoz,* No. 11-cr-167, 2012 WL 5351750, *4 (D. Minn. Oct. 30, 2012); *United States v. Cameron,* No. 1:09-cr-00024, 2011 WL 890502, *5–6 (D. Me. Mar. 11, 2011); *United States v. Diaz,* 720 F.Supp.2d 1039, 1041-43 (E.D. Wis. 2010) *United States v. Riley,* 655 F.Supp.2d 1298, 1304–05 (S.D. Fla. 2009); *United States v. McElheney,* 630 F.Supp.2d 886, 891 (E.D. Tenn. 2009); *United States v. Beiermann,* 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009); *United States v. Phinney,* 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009); *United States v. Grober,* 595 F.Supp.2d 382, 402 (D.N.J. 2008); *United States v. Doktor,* No. 6:08-cr-46, 2008 WL 5334121, *1 (M.D. Fla. Dec. 19, 2008); *United States v. Stern,* 590 F. Supp. 2d 945, 960-61 (N.D. Ohio 2008); *United States v. Johnson,* 588 F. Supp. 2d 997, 1003 (S.D. Iowa 2008); *United States v. Noxon,* No. 07-40152–01, 2008 WL 4758583, *2-3 (D. Kan. Oct. 28, 2008); *United States v. Ontiveros,* No. 07-CR-333, 2008 WL 2937539, at *8 (E.D. Wis. July 24, 2008); *United States v. Hanson,* 561 F.Supp.2d 1004, 1008-11 (E.D. Wis. 2008); *United States v. Shipley,* 560 F.Supp.2d 739, 744 (S.D. Iowa 2008); *United States v. Goldberg,* No. 05-CR-0922, 2008 WL 4542957, at *6 (N.D. Ill. Apr. 30, 2008).

following adjustments are applicable: a two-level downward adjustment under U.S.S.G. § 2G2.2(b)(1) (defendant did not intend to traffic in or distribute such material). The Court also finds the following upward adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for material containing a prepubescent minor); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other depictions of violence); a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a two-level increase under U.S.S.G. § 2G2.2(b)(7D) (for number of images, namely 132 images).

The Court finds that the evidence does not support a finding of more than 600 images. The Court agrees with the defendant that based on the evidence, he cannot be held accountable for more than 600 images dealing with unallocated hard drive space. *See e.g., United States v. Keefer*, 405 Fed. App'x. 955 (6th Cir. 2010) (unpublished) (the 6th Circuit Court of Appeals remanded the case for resentencing due to the erroneous application of the same image number enhancement). The Court in *Keefer* stated: ""Presence, however, does not inherently require knowing possession or access, as anyone who has received spam email or visited one website only to have another, inadvertently accessed, website pop-up knows all too well." Id. at 958.[5] The Court finds that if defendant accesses a website that has a number of images and there is no evidence that the

---

[5] The Sixth Circuit further stated:

A district court cannot consider conduct as 'relevant conduct' in its sentencing calculation 'unless the conduct at issue amounts to an offense for which a criminal defendant could potentially be incarcerated.' Therefore, to apply the enhancement here, the government must have shown by a preponderance of evidence that at some point Keefer knowingly possessed or knowingly accessed with intent to view each of the 600 or more images. *See* 18 U.S.C. § 2252A(a)(5)(B). United States v. Keefer, 405 F. App'x 955, 958 (6th Cir. 2010) (citations omitted).

defendant viewed the images, those images cannot be attributable to the defendant. The Court, therefore, finds the correct number of images, based on the evidence, is 132, and thus the appropriate enhancement is two levels.

Further, the Court finds there is not sufficient evidence to support the finding in the PSR that defendant used a data wiper to completely erase data from one or more of his drives. These findings result in an adjusted offense level of 30. There is no reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. At criminal history category II, defendant's guideline range is 108-135 months, for each charge. The Court further finds that a history category of II is appropriate, as the criminal history as set forth in the PSR is overstated. Both convictions occurred about twenty years ago, and one involved a fight over a girlfriend. The other involved a car stereo theft. Both crimes occurred approximately two months apart, and sentencing occurred on the same day.

    B.  *Section 3553(a) Factors*

Huyck's motion for a deviation or variance from the Guidelines is granted. The Court finds a sentence outside the Guidelines is warranted in this case. The Court finds a sentence of seventy-two months, followed by a period of supervised release for five years is adequate to fulfill the goals of sentencing in this case.

With respect to the nature and circumstances of the offense, the Court finds that possession of child pornography is a form of sexual exploitation and is a serious offense. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Huyck's conduct falls at the low end of the

continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children. A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.

The varying levels of participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme. The statutes criminalizing the possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. Although file-sharing arrangements contribute to Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit. Because he is not engaged in a profit-making enterprise, Huyck is not in the same class as a large-scale distributor of child pornography. There has been no showing that Huyck possessed child pornography in order to entice a child, had any improper contact with children, photographed minors engaged in sexual conduct, or made attempts to contact a child.

In determining this sentence, the Court has considered Huyck's history and characteristics. Psychological testing shows that he is arguably at low risk to commit acts of sexual violence or violence. Further, although the science in this area is not as definitive as the court would like it to be, there is no indication that Dr. Newring's psychological testing or conclusions are inappropriate or unreliable.

The Court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point. However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method. The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing

17

Commission's institutional role. Given the acknowledged flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the Court does not accord a high degree of deference to the Guidelines. It is difficult to defer to the Commission's Guidelines when even the Commission believes they are flawed.

It is clear that the Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Huyck's case and the result is a recommended sentence that is greater than necessary to provide just punishment. Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children.

The Court has also considered the need to avoid sentencing disparities, but is not persuaded by the comparison to the sentences imposed on other child pornography offenders in this district. It is the Court's duty under *Booker* and progeny to make an individualized assessment with respect to this defendant. The Court agrees with the Sentencing Commission that the problem with the Guidelines for non-production offenses is that the Guidelines do not help the Court distinguish between run-of-the-mill offenders and the worst offenders. The Sentencing Commission has acknowledged that enhancements that were originally intended to apply to only those offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

The Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders. In the context of this and other Internet child pornography crimes that involve

18

peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction between one who merely possesses and those who "receive," as opposed to "distribute." In this Court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range for either a possession or receipt offense. With the base offense level for receipt at 22, and the base offense level for possession at 18, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who possessed fewer than ten images that did not contain any of the images of prepubescent minors or sadistic or masochistic acts that are widely prevalent in child pornography could receive a sentence at the low end of the statutory range. Because of the nature of peer-to-peer file-sharing programs, a simple possessory crime evolves into a case that can be charged under the receipt prong of a receipt and distribution offense as soon as someone accesses a shared file. In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum and in some cases, exceeds it. In this case, as in most, a fairly typical offender with an insignificant criminal history has a recommended Guidelines imprisonment range that is close to the statutory maximum.

Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this

19

market-based and quantity-driven scheme. For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system. The images can be endlessly replicated. Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection. Moreover, the enhancement for number of images tops out at a five-level increase for more than 600 images. In this Court's experience, the number of images possessed or distributed usually measure in the thousands. The number of images enhancement is not rationally connected to the conduct at issue.

The Court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case. The statutes criminalizing the possession of child pornography, as amended over time, and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case involves no such conduct. The legislative history also shows Congressional concern with dangerous child abusers and repeat offenders. The defendant is neither.

20

Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders. The Guideline at issue, § 2G2.2, consists of a hodgepodge of outdated enhancements that apply in nearly every case, rather than furnishing means to carefully differentiate between offenders based on culpability and dangerousness. Again, Huyck does not fall into the category of the most dangerous child pornography offenders. The defendant has perhaps the least clinical evidence of potential for recidivism that the court has encountered. There is no evidence that he has, or is likely to, abuse children. On the culpability spectrum of increasingly serious child exploitation offenses, Huyck is an example of a defendant who deserves no more than the statutory minimum sentence, given the fact that his conduct is comparable to that of a mere possessor of child pornography and he is being sentenced for receipt.

The defendant would be at the low end of the spectrum even if the Court were to consider the factors that the Sentencing Commission now recommends. The content of the defendant's collection and the nature of his collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology) does not appear to be out of the ordinary; the degree of his engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation has not been shown to be unusual; and he has no history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

The Court finds that the Guidelines range of roughly ten to twelve years' imprisonment is completely out of proportion to the defendant's culpability in this case.

The Guidelines range is based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case (such as use of the Internet, amassing numerous images, possessing images of prepubescent minors, and depictions of violence) on a first-time offender with no allegations of distribution. The Guidelines-recommended sentence is greater than necessary to protect the public and to deter Huyck from reoffending. A sentence of six years is appropriate to achieve the goals of sentencing in this case. From a progressive discipline perspective, six years in jail is a significant term of imprisonment for this offense.

The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct, but much of that market is driven by compulsive behavior that arguably will not be deterred in any event. The deterrent effect of a lengthy sentence is further lessened by the international market for child exploitation offenses. The court finds any additional deterrent value of a longer sentence would be marginal. Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The Court further finds that an outside-the-Guidelines sentence will respect the distinction between Huyck's culpability and the far greater culpability of a distributor or producer of child pornography or an actual predator or abuser. The sentence imposed on a possessor of child pornography should be proportional to and significantly lower than a sentence for a distribution crime or exploitative crime that involves acts of abuse by a defendant. Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder. This sentence is relatively

proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

The Court finds there is insufficient evidence in the record to show that the defendant did not distribute, produce or download from any specific line.  He was not a registered member of the site, and there is no evidence he chatted with the other members, nor is he accused of any inappropriate behavior with children. It appears that he was on the computer in the first case for approximately 9 minutes of time and that he viewed 37 images or so. Many of the enhancements in this case involve use of a computer and the number of images, and as this Court has stated before, such evidence lacks substantial value in cases such as this one. The Court is of the opinion this is more of a possession case than anything else.  With regard to the first case, the Court sentenced Mr. Huyck to the mandatory minimum of five years. The Court finds a ten-year sentence for the second case is not appropriate, because this defendant's conduct does not go to the top of that level as it is not comparable to the conduct of the most serious offender. The Court balances that with the fact that the defendant has denied culpability, and so the Court finds an additional year in addition to the five-year mandatory minimum sentence the court must impose, is sufficient to fulfill the goals of sentencing in this case.  Accordingly, the court will sentence Huyck to six years on Count I, in the first case, 8:13CR107.  With regard to Count II in that case, the Court sentences defendant Huyck to thirty-six months, concurrent with the sentence on Count I.  With respect to Huyck's conviction in the second case, 8:15CR44, the Court sentences the defendant to thirty-six months to run concurrently with his sentence in 8:13CR107.

THEREFORE, IT IS ORDERED THAT:

1. The defendant's oral motion for a variance is granted.

2. A Judgment and Commitment and a Statement of Reasons in conformity with this Sentencing Order, and with the Court's findings at the sentencing hearing, will issue this date.

DATED this 19th day of October, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

24